# Exhibit A

## to FCA US's Notice of Removal

## Docket Sheet, Service of Process, and State Court File

# 22CV403295



## Hunter v. FCA US LLC (Class Action)

### Case Information

**Case Type:** Business Tort/Unfair Bus Prac Unlimited (07)
**Case Number:** 22CV403295
**Filing Date:** 9/20/2022
**Case Status:** Active
**Court Location:** Civil

## PARTIES

Show
All ⌄
entries

Search:

| ▲ Type | First Name | Middle Name | Last Name |
|--------|------------|-------------|-----------|
| Defendant | | | FCA US LLC |
| Notice | | | Superior Court o |
| Plaintiff | Eric | | Hunter |

Showing 1 to 3 of 3 entries

Previous | 1 | Next

## Attorneys

Show
All ⌄
entries

Search:

| ▲ Representing | First Name | Middle Name | Last Name |
|----------------|------------|-------------|-----------|
| Superior Court of California | | | Superior Court of C |

| Representing | First Name | Middle Name | Last Name |
|---|---|---|---|
| Eric Hunter | Joel | Dashiell | Smith |

Showing 1 to 2 of 2 entries

Previous | 1 | Next

# EVENTS

Show All entries

Search:

| File Date | File Type | Filed By | Comment |
|---|---|---|---|
| 10/25/2022 | Proof of Service: Summons DLR (Civil) | Eric Hunter, | Proof of Service Summons |
| 9/21/2022 | Order: Deeming Case Complex | Superior Court of California, | Order Deeming Case Complex and Stay Responsive Pleading Deadline - signed/ |
| 9/20/2022 | New Filed Case | | |
| 9/20/2022 | Complaint (Unlimited) (Fee Applies) | Eric Hunter, | Class Action Complaint + Complex Fee |
| 9/20/2022 | Civil Case Cover Sheet | Eric Hunter, | Civil Case Cover Sheet * Complex * Clas |
| 9/20/2022 | Summons: Issued/Filed | Eric Hunter, | |
| 9/20/2022 | Civil Lawsuit Notice | | 1st CMC set for 2/8/23 at 2:30pm in D3 |
| 9/20/2022 | Civil Lawsuit Notice | | Civil Lawsuit Notice 1st CMC set for 2/8 |

Showing 1 to 8 of 8 entries

Previous | 1 | Next

# HEARINGS

Show

Search:

| Department | Type | Date ▾ |
|---|---|---|
| Department 3 | Conference: Case Management | 2/8/2023 |

Showing 1 to 1 of 1 entries

Previous | 1 | Next



**CT Corporation**
**Service of Process Notification**
10/03/2022
CT Log Number 542422055

## Service of Process Transmittal Summary

**TO:**      Melissa Gravlin
             Fca Us Llc
             1000 CHRYSLER DR OFC OF
             AUBURN HILLS, MI 48326-2766

**RE:**      **Process Served in California**

**FOR:**     FCA US LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: Eric Hunter, individually and on behalf of all others similarly situated // To: FCA US LLC |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Declaration, Cover Sheet, Attachment(s), Order |
| **COURT/AGENCY:** | Santa Clara County Superior Court of California, CA<br>Case # 22CV403295 |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Class Action - 2019 Jeep Wrangler Rubicon Unlimited, VIN: 1C4HJXFG6KW566614 |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 10/03/2022 at 14:25 |
| **JURISDICTION SERVED:** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S)/SENDER(S):** | Joel D. Smith<br>Bursor & Fisher, P.A.<br>1990 N. California Blvd., Suite 940<br>Walnut Creek, CA 94596<br>(925) 300-4455 |
| **ACTION ITEMS:** | CT will retain the current log<br><br>Image SOP<br><br>Email Notification,  Lance Arnott  sopverification@wolterskluwer.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>330 N BRAND BLVD<br>STE 700<br>GLENDALE, CA 91203<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the



included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Mon, Oct 3, 2022
**Server Name:**                             DROP SERVICE

| Entity Served | FCA US LLC |
|---|---|
| Case Number | 22CV403295 |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

E-FILED
9/20/2022 3:33 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV403295
Reviewed By: R. Walker
Envelope: 10013054

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
FCA US LLC,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ERIC HUNTER, individually and on behalf of all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior of the State of California<br><br>County of Santa Clara, 191 North First Street San Jose, CA 95113 | CASE NUMBER:<br>*(Número del Caso):*<br>**22CV403295** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Joel D. Smith, Bursor & Fisher, P.A., 1990 N. California Blvd.,Suite 940 Walnut Creek, CA 94596, Tel: (925) 300-4455

| DATE:<br>*(Fecha)* | 9/20/2022 3:33 PM | Clerk of Court | Clerk, by<br>*(Secretario)* | R. Walker | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* FCA US LLC,

    under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

[SEAL]

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]   [ Save this form ]      [ Clear this form ]



E-FILED
9/20/2022 3:33 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV403295
Reviewed By: R. Walker

1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
          jsmith@bursor.com

2

3

4

5

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III (State Bar No. 320783)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: fklorczyk@bursor.com

6

7

8

9

10

*Attorneys for Plaintiff*

11

12

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13

**FOR THE COUNTY OF SANTA CLARA**

14

15

ERIC HUNTER, individually and on behalf of all
others similarly situated,

16

Case No. **22CV403295**

17

                              Plaintiff,

**CLASS ACTION COMPLAINT**

18

        v.

**JURY TRIAL DEMANDED**

19

FCA US LLC,

20

                              Defendant.

21

22

23

24

25

26

27

28

Plaintiff Eric Hunter ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against FCA US LLC ("Defendant"). The allegations in this complaint are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

## INTRODUCTION

1.     This is a putative class action against FCA US, LLC ("FCA" or "Fiat Chrysler Automobiles") on behalf of individuals who purchased or leased any of the following vehicles sold with an electronic sway bar disconnect (hereinafter, the "Class Vehicles"):[1]

- 2010-2017 Jeep Wrangler Rubicon ("JK")
- 2010-2017 Jeep Wrangler Unlimited Rubicon ("JKU")
- 2018-2020 Jeep Wrangler Rubicon ("JL")
- 2018-2020 Jeep Wrangler Unlimited Rubicon ("JLU")
- 2020 Jeep Gladiator Rubicon
- 2010 Dodge Ram 2500 Power Wagon
- 2011-2020 Ram 2500 Power Wagon

2.     As described in greater detail below, a sway bar (also called an "anti-roll bar" or "stabilizer bar") is part of a car's suspension system.  It provides stability and helps prevent the car from leaning to one side when turning.  Driving on streets or highways with a disconnected or malfunctioning sway bar is dangerous.

3.     For cars that are suitable for off-roading, like the Class Vehicles here, it is sometimes advantageous to temporarily disconnect the sway bar when driving in rough terrain. The Class Vehicles' suspension systems include an electronic sway bar disconnect, which is intended to allow the driver to quickly disconnect and reconnect the sway bar with the push of a button on the dashboard.

4.     The problem, however, is that the electronic sway bar disconnect has a dangerous defect, and thus poses a serious safety risk to drivers, occupants, and the general public (hereinafter, "the Sway Bar Defect").  Specifically, the electronic circuit board for the sway bar

---

[1] The term "Class Vehicles" are limited to those that were manufactured after June 10, 2009.

disconnect is in a housing with seals that are prone to failure and is located in an area that is likely to get wet or sprayed under ordinary or expected conditions, such as driving over puddles or in the rain. Failure of the circuit board occurs when liquid or contaminants breach a seal of the housing, resulting in a disconnected or malfunctioning sway bar. In some instances, the electronic sway bar disconnect will fail and not reconnect, forcing the driver to drive on roads and highways without a sway-bar. Driving on streets and highways with a disconnected or malfunctioning sway bar is dangerous.

5.     FCA has known about this problem for years but has taken no action to fix it. Instead, FCA continues to sell the Class Vehicles as safe, reliable and fit for their ordinary purpose. As a result, owners of the Class Vehicles have suffered or will suffer financial harm, including, *inter alia*: (1) out-of-pocket expenses to repair or replace defective electronic sway bar disconnects; (2) costs for future repairs or replacements; (3) sale of their vehicle at a loss; and/or (4) diminished value of their vehicles.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this class action. This Court has personal jurisdiction over the parties because Plaintiff resides in California and submits to the jurisdiction of the Court, and because Defendant, at all times relevant hereto, has systematically and continually conducted, and continues to conduct, business in this State, and operates multiple dealerships in Santa Clara County, such that suit in this County is foreseeable.

7.     Venue is proper in this Court pursuant to Civil Code § 1780(d) because FCA regularly transacts substantial business in this County, and the acts and omissions giving rise to this action occurred in large part at an FCA dealership in this County; and venue is proper under Code Civ. P. § 395.5 because this County is where the injury occurred. Additionally, FCA has advertised in this County and has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this County; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

/ /

/ /

**PARTIES**

8.      Plaintiff Eric Hunter is a citizen of California and resides in Los Angeles, California.  Mr. Hunter owns a 2019 Jeep Wrangler Rubicon Unlimited, VIN 1C4HJXFG6KW566614, which he purchased for his personal or household use from an authorized Jeep dealer: Gilroy Jeep in Gilroy, California.  Prior to his purchase, Mr. Hunter reviewed and relied on the window sticker.  He also spoke with a sales representative about the Class Vehicle he purchased.  None of the sources of information Mr. Hunter reviewed disclosed the Sway Bar Defect.  If there had been such a disclosure, Mr. Hunter would not have bought his Class Vehicle, or would have paid less for it.

9.      After his purchase, outside of the warranty window and a few days after driving his Jeep in a light rain, Mr. Hunter's Jeep stopped functioning entirely and was left stranded in a parking garage.  The car displayed a sway bar fault notification on his dashboard screen.  Mr. Hunter brought his car to Russell Westbrook Chrysler Dodge Jeep Ram of Van Nuys at 6110 Van Nuys Blvd., Van Nuys, California for repair, but the dealer blamed the issue on unrelated parts of the car which were fully functioning. After the attempted repairs, Mr. Hunter had to bring the car back several times because the Sway Bar Defect continued to manifest.  To date, Mr. Hunter has spent a substantial amount of money to have the sway bar and the wiring harness replaced, but the problems have not yet been resolved.

10.      Defendant FCA US LLC ("FCA") is a limited liability company organized and existing under the laws of the State of Delaware, and is wholly owned by holding company Fiat Chrysler Automobiles N.V., a Dutch corporation headquartered in London, United Kingdom. FCA's principal place of business and headquarters is in Auburn Hills, Michigan, in the Eastern District of Michigan.

11.      FCA (sometimes referred to as Chrysler) is a motor vehicle "Manufacturer" and a licensed "Distributor" of new, previously untitled Chrysler, Dodge, Jeep, and Ram brand motor vehicles.  FCA's Chrysler brand is one of the "Big Three" American automobile brands.  FCA engages in commerce by distributing and selling new passenger cars and motor vehicles under its Chrysler, Dodge, Jeep, and Ram brands.  Other major divisions of FCA include Mopar, its

1    automotive parts and accessories division, and SRT, its performance automobile division.  As of

2    2015, FCA is the seventh largest automaker in the world by unit production.

3         12.    FCA's business operations in the United States include the manufacture,

4    distribution, and sale of motor vehicles and parts through its network of independent, franchised

5    motor vehicle dealers.  FCA is engaged in interstate commerce in that it sells vehicles through this

6    network located in every state of the United States.

7         13.    FCA sells its trucks through FCA franchise dealerships.  FCA distributes

8    information, including window stickers, about the Class Vehicles to its dealers for the purpose of

9    passing that information to consumers.  FCA also understands that its dealers pass on information

10   from FCA about the characteristics, benefits, and quality of the Class Vehicles to consumers.  The

11   dealers act as FCA's agents in selling the Class Vehicles and disseminating information about them

12   to customers and potential customers.

13                      **TOLLING OF STATUTES OF LIMITATIONS**

14        14.    Any applicable statute(s) of limitations have been tolled by FCA's knowing and

15   active concealment and denial of the facts alleged herein.  Plaintiff and Class members could not

16   have reasonably discovered the true nature of the defects at issue here, and FCA's role in causing

17   the defects, until shortly before this class action litigation was commenced.

18        15.    FCA was and remains under a continuing duty to disclose to Plaintiff and the

19   members of the Class the true character, quality and nature of the Class Vehicles, *i.e.* that the

20   electronic sway bar disconnects are defective and will require costly repairs, pose safety concerns,

21   and diminish the resale value of the Class Vehicles.  As a result of the active concealment by FCA,

22   any and all applicable statutes of limitations otherwise applicable to the allegations herein have

23   been tolled.

24                              **FACTUAL ALLEGATIONS**

25   I.    **The Sway Bar Defect**

26        16.    A sway bar (sometimes called an "anti-roll" or "stabilizer" bar) is part of a car's

27   suspension and is designed to keep the car level and prevent body roll.  When a car is inclined to

28   lean to one side—which typically happens when the car turns—the sway bar helps resist leaning by

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                              5

applying upward force on one side and downward force on the other.  This force tends to restore the wheels to the same height and keeps the vehicle level.  Without a sway bar, a driver could lose control and flip the car when driving at high speed, particularly on a curve.

17.     Although the sway bar is an important safety feature in ordinary day-to-day travel, it is not ideal for "off-roading" or driving in rough and uneven terrain.  Temporarily disconnecting the sway bar when off-roading allows greater suspension "articulation," meaning how far up and down the axle can move relative to the car chassis.  Increasing articulation allows the vehicle to keep all four tires in contact with the ground on rough terrain, which in turn provides better stability and traction.  For example, if one wheel is forced up by a large boulder, the opposite side is pushed down as the suspension conforms to the terrain.  Conversely, if one wheel drops down into a deep hole, articulation allows the opposite and higher wheel to maintain contact with the ground.  Articulation is one of the most important factors in determining if a car can get over an obstacle.

18.     Generally, a driver with the right tools and know-how can obtain greater articulation by manually disconnecting the front sway bar links.  The Class Vehicles, however, are sold with an electronic sway bar disconnect, which is marketed as a premium off-road feature that allows the driver to connect or disconnect the sway bar with the flip of a dash-mounted switch.  The electronic sway bar disconnect is a material feature to consumers and comes at a premium price.

19.     FCA promotes this feature on its Jeep-brand website, jeep.com, where it claims, "the Electronic Sway Bar Disconnect system allows you to remotely disconnect your sway bar from the cabin, so front wheels can drop and compress for better suspension and articulation on tough terrain."  This statement is accompanied by a handful of photographs depicting a Jeep Rubicon driving over a boulder-filled landscape where disconnecting the sway bar would be necessary or advisable:

1
2
3
4
5
6
7
8

 

 

9
10
11
12
13
14
15
16    20.    FCA also promotes this feature on its Ram-brand website for the Power Wagon,

17 ramtrucks.com and in its brochures, where it states that the "Electronically Disconnecting Front

18 Sway Bar, [is] essentially a two piece bar that disconnects, allowing far more front suspension

19 articulation" and that the "front stabilizer bar allows up to 26.3 inches of articulation…"  This

20 statement is also accompanied by a handful of photographs depicting a Power Wagon driving over

21 rough terrain with the tagline "THERE IS SIMPLY NO OTHER TRUCK YOU CAN BUY WITH

22 THIS LEVEL OF FACTORY-WARRANTED CAPABILITY."  In fact, one of the main pictures

23 in the Ram Truck Brochure prominently displays the actuator (circled in red):

24
25
26
27
28



THERE IS SIMPLY NO OTHER TRUCK YOU CAN BUY WITH THIS LEVEL OF FACTORY-WARRANTED CAPABILITY. 6.4L HEMI® V8 with

21.     The electronic sway bar disconnect is a feature unique to only the Jeep Rubicon and the Ram Power Wagon.  No other standard model Jeeps or Ram pickups can be equipped with this feature.

22.     The design of the electronic sway bar disconnect is stunningly bad.  For starters, the electronic actuator mechanism and circuit board are in a housing with seals that are prone to failure.  In turn, that housing is located low enough in the engine compartment that gets wet when the car drives over puddles, streams, or wet roads.  Water and/or other contaminants tend to damage electronic components.  When the circuit board for the electronic sway bar disconnect gets

wet or comes in contact with contaminants, the system is prone to malfunction and/or complete failure. This failure may also be exacerbated by the limited electrical insulation of the circuit board in proximity to the metal housing the circuit board is placed in. In any case, the Class Vehicles' circuit boards uniformly fail and/or malfunction because of unwanted (but foreseeable) exposure to water and other contaminants.

23.   Below is a photograph of a damaged circuit board inside the housing:



24.   Below is a photograph of a damaged circuit board removed from the housing:



25.     Below is a photograph showing an under-chassis view of a Jeep, with the electronic sway bar disconnect circled in red:



26.     Below is a photograph showing an under-chassis view of a Power Wagon, with the electronic sway bar disconnect circled in red:



27.     This failure due to water and/or contaminant intrusion, occurs through exposure to rain, road spray, and puddles on the road in the normal course of driving.

## II.    FCA Told Consumers That The Class Vehicles Can Ford 30 Inches Of Water

28.    To make matters worse, FCA says that the Class Vehicles are capable of fording water up to 30 inches deep. This information can be found, for example, on interior door stickers and in the user manuals:



29.    The Class Vehicles' ability to ford up to 30 inches of water is also touted through FCA's marketing materials, as shown by this 2013 Jeep brochure, which states that "Wrangler has the capability to safely manage in up to 30 inches of water:"



30.    As does this 2015 Jeep brochure:



31.    Even the press release for the 2016 Power Wagon highlights that the Power Wagon has "significant clearance for navigating a variety of severe inclines and declines, as well as providing up to 30 inches of water-fording capability:"[2]

**Ground Clearance and Protection**
Power Wagon provides optimal balance between on-road civility and off-road capability with 33-inch Goodyear Wrangler DuraTrac tires, which feature a beefy tread pattern to help grab ledges along the trail and deliver optimum traction through sand, mud and snow — a workhorse tire for rugged off-road terrain that still offers a quieter ride on paved roads.

Larger tires and a suspension lift contribute to the Power Wagon's 14.3-inch ground clearance, compared to 12 inches on the Ram 2500 Heavy Duty. The truck's approach angle is boosted to 33.6 degrees, the departure angle is increased to 26.2 degrees and the breakover angle is enhanced to 23.5 degrees. This gives the Ram Power Wagon significant clearance for navigating a variety of severe inclines and declines, as well as providing up to 30 inches of water-fording capability.

Underneath the 2017 Ram Power Wagon are generous underbody protection components. Fore-aft bars bring together the transfer case and fuel tank skid plates, resulting in armor that minimizes underside damage and rock wedging.

//

//

---

[2] https://media.fcanorthamerica.com/newsrelease.do?id=17288&mid=71

32.     The press release for the 2017 Power Wagon also specifies that the "Power Wagons off-road capabilities include … 30 inches of water fording:"[3]

The 2017 Ram Power Wagon offers unique, segment-leading off-road equipment including:

- 12,000-pound Warn winch
- Bilstein mono-tube shocks
- Five-link rear coil spring suspension
- Smart Bar electronic disconnecting sway bar
- Electric locking front and rear differentials
- 33-inch Goodyear Wrangler DuraTrac tires
- Complete under-chassis armor
- 6.4-liter HEMI® V-8 with 410 horsepower and 429 lb.-ft. of torque
- Tow hooks

Ram Power Wagon's off-road capabilities include 14.3-inch ground clearance, 26 inches of wheel travel and 30 inches of water fording.

33.     The problem is, at that depth, the actuator for the electronic sway bar disconnect would be, at least partially if not fully, submerged for both a Jeep and Power Wagon:





---
[3] https://www.prnewswire.com/news-releases/ram-announces-pricing-for-2017-power-wagon-300359848.html

34.     Thus, even though the vehicles are supposed to be able to drive through water that partially, if not fully, submerges the sway bar actuator housing (*i.e.*, 30 inches), the housings still fail in conditions much less extreme, such as those found on normal wet roads after a rainstorm.

35.     When the electronic sway bar disconnect malfunctions due to exposure, drivers can no longer use it to re-connect the sway bars, making the vehicle hazardous to drive under normal driving conditions.  Owners also have reported that malfunctions can cause the dashboard sway bar indicator light and/or the sway bar fault warning light to flash on and off erratically, causing an unsafe distraction.  Either way, the Sway Bar Defect poses a safety hazard and reduced function.

36.     FCA knows that driving with a disconnected sway bar is dangerous.  FCA's parts, service and customer care organization, Mopar, posted a video on YouTube warning customers: "Do not disconnect the sway bar and drive on hard-surfaced roads or at speeds above 18 mph (29 km/h) or you could lose control of the vehicle, which can result in serious injury."[4]

37.     The electronic sway bar disconnect system is the same or substantially the same in all Class Vehicles.  Most importantly, in each instance, the actuator housing is not properly sealed and is located in an area likely to get wet or sprayed.  Furthermore, the actuator part number for all Jeep Class Vehicles is the same: 68044411AC.  There are two actuator part numbers for the Ram Class Vehicles depending on the model year,[5] but for all Class Vehicles—whether Jeep or Ram— the actuators look alike and are identical in all material respects:

---

[4] https://www.youtube.com/watch?v=jn2Do1qte4k

[5] 6804412AA (2006-2012 Power Wagon); 68217400AA (2013 and later Power Wagons).

*Jeep Actuator*                         *Ram Actuator*




### III.   FCA's Knowledge Of The Sway Bar Defect

38.     FCA has known about the Sway Bar Defect since 2005, and in no event later than the time Plaintiff purchased his vehicle.

39.     The design of the electronic sway bar disconnect is so obviously ill-conceived that FCA must have anticipated the Sway Bar Defect from the moment it put the feature on the market. FCA also would have known about the defect through sources not available to Plaintiff and Class members, including, but not limited to:  pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to FCA's network of dealers and directly to FCA, aggregate warranty data compiled from FCA's network of dealers, testing conducted by FCA in response to consumer complaints, and repair order and parts data received by FCA from its network of dealers and suppliers.

40.     FCA also must know about the Sway Bar Defect because since 2011 at the latest, there has been a small cottage industry of companies providing aftermarket manual disconnect systems to replace the stock electronic systems provided by FCA.  To be sure, there are many kinds of aftermarket parts available for Jeep and Ram vehicles, but the market for them exists largely because the parts are cheaper, or offer improved performance or aesthetics.  However, the market for aftermarket manual disconnect systems is different: that market exists mainly because the stock electronic systems are defective.

41.     For example, EVO Manufacturing sells the "No Limits Manual Rubicon Sway Bar Disconnect," stating: "The Factory Rubicon Swaybar Disconnect is a great feature but is prone to breaking, shorting out and all around being annoying. The EVO No Limits Manual Disconnect now allows you to defeat the overly troublesome computer system that operates this very cool feature that Rubicon Model JK's come with."[6] Other manufacturers such as Currie Enterprises and JKS Manufacturing also offer manual alternatives to the stock electronic sway bar disconnect found in the Class Vehicles. It defies credulity that FCA would not know that other companies openly advertise and provide alternative parts *solely to avoid or remedy manifestation of the Sway Bar Defect.*

42.     For many years, FCA also would have been aware of customer complaints about the Sway Bar Defect as a result of online reputation management (or "ORM") efforts. ORM is now a standard business practice among most major companies and entails monitoring consumer forums, social media and other sources on the internet where consumers can review or comment on products. "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation."[7] The growth of the internet and social media, along with the advent of reputation management companies, has led to ORM becoming an integral part of many companies' marketing efforts.

43.     For many years, owners have been complaining about the Sway Bar Defect on Jeep and Ram enthusiast websites like wranglerforum.com or jk-forum.com. FCA would have learned about these complaints in connection with its ORM efforts. The unusually high number of consistent complaints spanning many years would have put FCA on notice of the Sway Bar Defect. Examples are quoted below, but many more are available online:

---

[6] http://evomfg.com/EVO-MFG-Products/Jeep-Gladiator-JT?product_id=154

[7] https://en.wikipedia.org/wiki/Reputation_management#Online_reputation_management.

- <u>April 2011</u>: "Sway bar light keeps blinking when driving and if I try to disconnect sway bar it does not disconnect. Anybody else had this problem?"[8]

- <u>April 2011 Response to post above</u>: "this has been talked about a thousand … no a million times, just do a search…

- <u>October 2012</u>: I'm sure most JK Rubi owners are aware of the problems with the electronic sway bar disconnect system so I thought I would share my solution. When mine failed the dealership wanted $2200 to replace the entire sway bar system as they do not sell just the motor. The luxury of hitting a button to disconnect was not worth that kind of money to me, especially since there have been no improvements made to the system. It's not a matter of IF they'll fail, but WHEN, so I might as well have lit a match to that $2200. I considered just using the same type of manual disconnects that most jeepers use, until I came across Offroad Evolution's manually operated solution for the troublesome electronic motor.[9]

- <u>December 2014</u>: "Hi everyone, I am having a lot of problems with my electronic sway bar disconnect system—it is shorting out and making a bunch of lights come on."[10]

- <u>February 23, 2016</u>: "Ok i have read tons of forums and complaints on the E-disco. I have had problems the last year and so much so that I haven't even thought about touching that dreaded button in fear I wouldn't be able to get the sway bar to reconnect. Well I get into the jeep for my daily 30 mile commute and the damn sway bar light is flashing!!! Out of no where, I haven't even been in 4 wheel drive in two weeks. I researched and tore the thing open to get a ton of black water pouring out. I cleaned it all up regreased and disconnected the battery in hopes my sway bar would re connect. No luck!!! The drive is terrible it sways like an ocean liner. Any tips on how to get it to reconnect. In the past I would have to get under it while I had the Mrs push the button while I shook it aggressively and it would reconnect it isnt working anymore. I think its time for Chrysler to admit they have a major issue and recall these dreaded POS."[11]

---

[8] https://www.jk-forum.com/forums/stock-jk-tech-12/electronic-sway-bar-disconnect-175897/

[9] https://www.jk-forum.com/forums/jk-write-ups-39/jk-rubicon-e-swaybar-disconnect-mod-250055/

[10] https://www.jk-forum.com/forums/modified-jk-tech-2/disarm-electronic-sway-bar-disconnect-2012-jku-rubicon-314659/

[11] https://www.wranglerforum.com/f202/electronic-sway-bar-disconnect-problems-again-1621433.html

- February 25, 2016: "The dealer replace mine 3 time and on the 4th time they would not. I have been using the EVO for a few years now and it works great. No more problems."[12]

- July 2016: "There's been some old older discussions about issues with the electronic sway bar disconnect, so I thought I'd add mine to the short pile.

   When I bought my '12 JKUR last December, something was wrong with the sway bar and they fixed it. Last weekend I went out on Switzerland Trail to test the skids I just put on...and guess what? Sway bar wouldn't disconnect. (Yup unfortunately this is the 1st time I've attempted it).

   Took it back to the dealership to moan and groan and wonder if they fixed the right thing. They pulled the records. At the time I was told the sway bar disconnected but wouldn't reconnect.

   In December they replaced a module. This past week I got to find out the actuator is bad, my extended warranty doesn't cover it, and the manuf 100k powertrain warranty doesn't cover it either."[13]

- August 2018: "I was considering adding the Mopar electronic sway bar disconnect that comes on the Rubicon to my Willys. But the more I read about it, the more I'm coming across LOTS of people that are having problems with it working reliably.

   The problem with it malfunctioning is apparently so prevalent that the aftermarket has stepped in with a lot of work around solutions to "fix" the Mopar disconnect, e.g. Manual release/engage cables, conversions to air actuation, video's that delete the circuit card entirely in the disconnect and actuate purely on 12vdc, etc..."[14]

---

[12] *Id.*

[13] https://www.jkowners.com/forum/stock-jk-tech-dept/329481-electronic-sway-bar-woes-options.html

[14] https://www.wranglerforum.com/f274/electronic-sway-bar-disconnect-alternatives-2325915.html

44.     Moreover, anyone conducting online reputation management for FCA would have found the complaints with a Google search using the terms "electronic sway bar disconnect problem." Such a search would reveal many complaints about the Sway Bar Defect going back as far as 2008:

www.jkowners.com › ... › Modified JK Tech Dept. ▾

## Rubicon Sway Bar Disconnect Problem | JKOwners Forum

Nov 15, 2007 - The automatic **sway bar disconnect** on my 2 door Rubicon quit ... They replaced the **sway bar** and **electronic disconnect** under warranty.

| | |
|---|---|
| **electric swaybar disconnect problems**? | Jun 6, 2008 |
| **Electrical** mystery? Try the **sway bar** fuse... | Jul 18, 2009 |
| Front **sway bar disconnect** repair | Apr 21, 2009 |
| **Electronic Sway bar** craziness | Dec 28, 2009 |

More results from www.jkowners.com

www.jk-forum.com › ... › Modified JK Tech ▾

## Rubicon Owners have problems with the Elec Sway Bar failing ...

Apr 22, 2017 - Hey rubicon owners has anyone had any **problems** with there **electronic sway bar** motor failing and not **disconnecting**. just read a article on the forum about it ...

| | |
|---|---|
| rubicon **sway bar** light flash non-stop all the time????? - JK ... | Sep 15, 2010 |
| **Sway Bar** light issue - JK-Forum.com - The top destination for ... | Feb 13, 2015 |
| **Electronic Sway bar disconnect** - JK-Forum.com - The top ... | Apr 30, 2011 |
| Rubicon **Sway Bar Problem** - JK-Forum.com - The top ... | Sep 26, 2014 |

More results from www.jk-forum.com

wayalife.com › showthread.php › 5287-My-electronic-... ▾

## My electronic swaybar disconnect killed my jeep - WayaLife

So, long story short, the mechanic **disconnected** it, and all **issues** disappeared. I will be installing the Manual Rubicon **Swaybar Disconnect**, ...

Mar 1, 2013 - 10 posts - 7 authors

45.     Federal law requires automakers like FCA to notify and update National Highway Traffic Safety Administration of potential defects. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). Accordingly, FCA monitors customer complaints and warranty data to track

reports of defects that pose a safety hazard.  From these sources, FCA knew that Class Vehicles were experiencing unusually high levels of malfunctions with the sway bar systems.  Moreover, the complaints were frequent enough, and similar enough, to put FCA on notice that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the Class Vehicles.

46.     FCA also has known from the first day it sold the Class Vehicles that a malfunctioning sway bar can pose a serious safety hazard.

47.     As, a result of the combined factors described above, FCA knew about the defect at the time of sale, but Plaintiff and the Class members did not.  Given the nature of the Sway Bar Defect, it would have been difficult for Plaintiff and Class members to discover the defect until after they purchased the Class Vehicles.

**IV.     FCA Never Disclosed The Sway Bar Defect**

48.     FCA had a duty to disclose the Sway Bar Defect to consumers. However, FCA has never disclosed the Sway Bar Defect in the owner's manuals, window stickers, advertisements, any of the venues FCA used to sell the Class Vehicles, or anywhere else.

49.     In the owner's manuals for Jeep and Ram vehicles, FCA made partial representations by describing in detail how to use the electronic sway bar disconnect and the circumstances when using it is appropriate.  The owner's manuals did not disclose the Sway Bar Defect or otherwise disclose that the actuator mechanism and circuit board are in a housing with seals that are prone to failure.  Despite, the owners' manuals for the Class Vehicles nonetheless promised that the Class Vehicles were capable for fording water up to 30 inches deep.

50.     Jeep and Ram window stickers also highlighted the electronic front sway bar disconnect as a selling feature.  These partial representations also created a duty to disclose the Sway Bar Defect, but FCA never disclosed the Sway Bar Defect or otherwise disclosed that the actuator mechanism and circuit board are in a housing with seals that are prone to failure.

51.    For example, the Monroney Sticker for a 2019 Ram Power Wagon described a "Front Disconnecting Stabilizer Bar":

STANDARD EQUIPMENT (UNLESS REPLACED BY OPTIONAL EQUIPMENT)
FUNCTIONAL/SAFETY FEATURES
Advanced Multistage Front Airbags
Supplemental Side-Curtain Front and Rear Airbags
Supplemental Front Seat-Mounted Side Airbags
ParkView® Rear Back-Up Camera
ParkSense® Front / Rear Park-Assist System
4.10 Axle Ratio
Tru-Lok® Front and Rear Axles
Front Disconnecting Stabilizer Bar
WARN® 12,000-lb. Capacity Front Electric Winch
Ram Articulink® Suspension
Traction Control

52.    The Monroney Sticker for a 2016 Wrangler Unlimited Rubicon described a "Front Active w/ Driver Control Anti-Roll Bar":

MECHANICAL
4.10 Rear Axle Ratio
Performance Suspension
GVWR: 5,700 lbs
50 State Emissions
Manual Transfer Case
Part-Time Four-Wheel Drive
Driver Selectable Front Locking Differential
Driver Selectable Rear Locking Differential
600CCA Maintenance-Free Battery
160 Amp Alternator
Towing Equipment -Inc: Trailer Sway Control
4 Skid Plates
892lbs. Maximum Payload
HD Shock Absorbers
Front Active w/Driver Control Anti-Roll Bar
and Rear Anti-Roll Bar
Hydraulic Power-Assist Steering

53.     The Monroney Sticker for 2020 Wrangler Unlimited Rubicon included identical descriptions of "Front Active w/ Driver Control Anti-Roll Bar":

**MECHANICAL**
- 4.10 Rear Axle Ratio
- Performance Suspension
- GVWR: 5,800 lbs
- 50 State Emissions
- Manual Transfer Case
- Part-Time Four-Wheel Drive
- Driver Selectable Front Locking Differential
- Driver Selectable Rear Locking Differential
- 650CCA Maintenance-Free Battery w/Run Down Protection
- 220 Amp Alternator
- Aux Battery
- Stop-Start Dual Battery System
- Towing Equipment -inc: Trailer Sway Control
- 5 Skid Plates
- 992# Maximum Payload
- HD Shock Absorbers
- Front Active w/Driver Control Anti-Roll Bar and Rear Anti-Roll Bar

54.     The Monroney Sticker for a 2011 Wrangler Rubicon described an "Electronic front sway bar disconnect":

**MECHANICAL**
- 3.8L SMPI V6 engine
- 4.10 axle ratio
- Tru-Lok front & rear axles
- Hill start assist
- Next generation Dana 44 HD front axle
- Next generation Dana 44 HD rear axle
- 4:1 Rock-Trac HD part-time 4WD system
- 600-CCA maintenance free battery
- 140-amp alternator
- (2) front/(1) rear tow hooks
- Rock rails
- Fuel tank skid plate
- Transfer case skid plate
- Performance suspension
- Rear stabilizer bar
- Electronic front sway bar disconnect
- Pwr steering
- 4-wheel disc brakes
- Hydraulic assist brake boost

55.     The partial representations and omissions on the Monroney stickers for all other Class Vehicles were the same or substantially similar, and in no case did FCA ever disclose the

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                        22

1    Sway Bar Defect.

2       56.     In sum, and as alleged above, FCA knew about the Sway Bar Defect before the sale,

3    the various venues the manufacturer used to sell the product failed to disclose the defect, and

4    Plaintiff would not have purchased his Class Vehicles or would have paid less for it had he known

5    about the Sway Bar Defect.

6       **V.      The Sway Bar Defect Causes Financial Harm To Class Members**

7       57.     FCA has had a uniform and consistent policy of denying warranty coverage for the

8    Sway Bar Defect.  On June 18, 2020, FCA publicly stated that the warranties for each of the Class

9    Vehicles do not cover the Sway Bar Defect at issue here.

10      58.     Replacing a damaged electronic sway bar disconnect typically costs approximately

11   $1,500-$2,000 for the part alone, and not counting the additional costs of labor.  Hence, Plaintiff

12   and Class members suffer pecuniary harm whenever they are forced to pay for repair or

13   replacement of the electronic sway bar disconnect.

14      59.     Despite actual and constructive knowledge of Class Vehicle defects as described in

15   this complaint, FCA failed to cure Class Vehicle defects.

16      60.     All Class Vehicles all contained the Sway Bar Defect, whether latent or manifested,

17   at the time of sale and within the warranty period.  However, FCA fails to adequately repair the

18   defect free of charge.

19                          **CLASS ACTION ALLEGATIONS**

20      61.     Plaintiff brings this action on his own behalf and on behalf of all other persons

21   similarly situated pursuant to the provision of Code of Civil Procedure § 382 and Civil Code

22   § 1781.  Plaintiff seeks certification of the following class (the "Class"):

23              **All persons in California who purchased, leased, or owned a**
24              **Class Vehicle (the "Class");**

25      62.     Subject to additional information obtained through further investigation and

26   discovery, the foregoing class definition may be modified by an amended complaint or at class

27   certification.

28

---

63.     Specifically excluded from the Class are FCA, FCA's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by FCA, and their heirs, successors, assigns, or other persons or entities related to or affiliated with FCA and/or FCA's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

64.     **Numerosity.** The members of the proposed Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands of individuals that are members of the proposed Class. Although the precise number of proposed members is unknown to Plaintiff, the true number of Class members is known by FCA. More specifically, FCA and its network of authorized dealers, maintains databases that contain the following information: (i) the name of each Class member that leased or purchased a vehicle; and (ii) the address of each Class member. Thus, Class members may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

65.     **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

> (a)     Whether the electronic sway bar disconnects installed in the Class Vehicles are prone to premature failure;

> (b)     Whether the electronic sway bar disconnects installed in the Class Vehicles contain a design defect;

> (c)     Whether the Sway Bar Defect in the Class Vehicles present a safety risk;

> (d)     Whether FCA knew or should have known about the Sway Bar Defect when it sold the Class Vehicles;

> (e)     Whether FCA had a duty to disclose that the electronic sway bar disconnects are defective and/or prone to premature failure and present a safety risk;

(f)     Whether FCA breached a duty to disclose the Sway Bar Defect;

(g)     Whether FCA intentionally and knowingly concealed, suppressed and/or omitted material facts about the existence of the Sway Bar Defect;

(h)     Whether Class members would pay less for a Class Vehicle if FCA, at the time of purchase or lease, disclosed the Sway Bar Defect;

(i)     Whether FCA is liable to Plaintiff and Class members under the causes of action alleged in this complaint; and

(j)     Whether Plaintiff and Class members are entitled to restitution, equitable, injunctive, compulsory, and/or other relief

66.     **Typicality.** Plaintiff's claims are typical of the claims of the other Class members in that Plaintiff lost money or property arising out of the same illegal actions and conduct by FCA

67.     **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of Class members.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

68.     **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The financial detriment suffered by Class members is relatively small compared to the burden and expense of individual litigation of their claims against FCA.  It would, thus, be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

69.     In the alternative, the Class and Subclasses may also be certified because:

(a)    the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for FCA;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    FCA acted or refused to act on grounds generally applicable to the Class and Subclasses whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## CLAIMS FOR RELIEF

### COUNT I
**Violation of California's Consumer Legal Remedies Act,**
**California Civil Code § 1750 *et seq.* ("CLRA")**

70.    Plaintiff hereby incorporates and realleges each preceding paragraph as though fully set forth herein.

71.    Plaintiff Hunter brings this claim on behalf of himself and the other members of the Class against FCA.

72.    FCA is a "person" as defined by California Civil Code § 1761(c).

73.    Plaintiff Hunter and the other California Class members are "consumers" within the meaning of California Civil Code § 1761(d).

74.    By failing to disclose and concealing the Sway Bar Defect, FCA violated California Civil Code § 1770(a), as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised. *See* Cal. Civ. Code §§ 1770(a)(5), (7) & (9).

75.     FCA's unfair and deceptive acts or practices occurred repeatedly in FCA's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

76.     FCA knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

77.     FCA was under a duty to Plaintiff and the other members of the California Class to disclose the defective nature of the Class Vehicles' electronic sway bar disconnect systems and/or the associated repair costs because: a) FCA was in a superior position to know the true state of facts about Sway Bar Defect; b) Plaintiff and the Class members could not reasonably have been expected to learn or discover that their Class Vehicles have a dangerous safety defect until after they purchased the Class Vehicles; and c) FCA knew that Plaintiff and the other Class members could not reasonably have been expected to learn about or discover the Sway Bar Defect.

78.     By failing to disclose the Sway Bar Defect, FCA knowingly and intentionally concealed material facts and breached its duty not to do so.

79.     The facts concealed or not disclosed by FCA are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.  Had Plaintiff and the other Class members known about the Sway Bar Defect at the time of purchase, they would not have purchased the Class Vehicles or would have paid less for them.

80.     As a result of FCA's misconduct, Plaintiff and other Class members have suffered monetary harm in that the Class Vehicles are defective and require repairs or replacement.

81.     As a direct and proximate result of FCA's unfair or deceptive acts or practices, Plaintiff and the other Class members have suffered and will continue to suffer losses.

82.     In connection with their CLRA claim, the Plaintiff Hunter and the Class members seek restitution, injunctive relief, and attorneys' fees and costs.

**COUNT II**
**Violation of California's Unfair Competition Law ("UCL"),**
**Bus. & Prof. Code § 17200 *et seq.***

83.     Plaintiff hereby incorporates and realleges each preceding paragraph as though fully set forth herein.

84.     Plaintiff Hunter brings this cause of action on behalf of himself and the other members of the California Class against FCA.

85.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

86.     FCA knew that the Class Vehicles suffered from a latent Sway Bar Defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

87.     In failing to disclose the Sway Bar Defect, FCA knowingly and intentionally concealed material facts and breached its duty to disclose, thereby engaging in a fraudulent business act or practice within the meaning of the UCL.

88.     FCA was under a duty to Plaintiff and the other members of the California Class to disclose the Sway Bar Defect because: a) FCA was in a superior position to know the true state of facts about the safety defect in the Class Vehicles; b) FCA made partial disclosures about the Class Vehicles without revealing the Sway Bar Defect; and c) FCA actively concealed the Sway Bar Defect from Plaintiff and the other Class members at the time of sale and thereafter.

89.     The facts concealed or not disclosed by FCA are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease the Class Vehicles, or to pay less for them. Had Plaintiff and the Class members known about the Sway Bar Defect at the time of purchase, they would not have purchased or leased the Class Vehicles or would have paid less for them.

90.     FCA's omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of the UCL, in that FCA's conduct was injurious to

consumers, offended public policy, and was unethical and unscrupulous. Plaintiff also asserts a violation of public policy arising from FCA's withholding of material safety facts from consumers. FCA's violation of consumer protection and unfair competition laws resulted in harm to consumers.

91.     FCA's omissions of material facts, as well as post-sale refusal to remedy the Sway Bar Defect or pay for necessary repairs, also constitute unlawful business acts or practices because they violate consumer protection laws and the common law as set forth herein.

92.     FCA's omissions of material facts, as well as post-sale refusal to remedy the Sway Bar Defect or pay for necessary repairs, also constitute "unfair" conduct under the UCL, because FCA's conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. There is no utility to FCA's conduct; or alternatively, any such utility is outweighed by the gravity of harm to Plaintiff and to the Class members. Furthermore, the consumer injury is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) the injury is one that consumers could not have reasonably avoided.

93.     FCA knowingly sold Class Vehicles with unreliable and defective electronic sway bar disconnect systems, and then refused to pay for necessary repairs, to save money. FCA knew that Plaintiff and class members would suffer financial harm as a result of the Sway Bar Defect in the form of repair costs and diminution in value to their Class Vehicles, and in fact Plaintiff and class members have suffered such financial harm.

94.     FCA's unfair or deceptive acts or practices occurred repeatedly in FCA's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

95.     As a direct and proximate result of FCA's unfair and deceptive practices, Plaintiff and the other members of the Class have suffered and will continue to suffer out-of-pocket losses.

96.     In connection with their UCL claim, Plaintiff and the California Class members seek restitution, disgorgement, injunctive relief, and any other relief available under the statute.

## COUNT III
### Unjust Enrichment

97.   Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

98.   Plaintiff brings this claim on behalf of himself and the Class.

99.   Plaintiff and members of the Class conferred a benefit on FCA by leasing or purchasing the Class Vehicles.  FCA was and should have been reasonably expected to provide Class Vehicles free from the Sway Bar Defect.

100.   FCA unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of its omissions and concealment of the Sway Bar Defect in the Class Vehicles.  FCA benefited, at Plaintiff's expense, when it sold or leased Plaintiff a vehicle that was inferior to the vehicle Plaintiff thought he was purchasing, yet the price he paid was the price for a supposedly better functioning vehicle he thought he was purchasing.  Put another way, a benefit was conferred in the form of the inflated purchase price paid for defective and unsafe vehicles that were worth much less.

101.   The unjust enrichment claim is not limited to omissions made at the point of sale. FCA also unjustly profited at the expense of class members because it knows the Sway Bar Defect is substantially likely to materialize during the useful life of the Class Vehicles, yet refuses to pay for repairs when needed.

102.   As a proximate result of FCA's omissions and concealment of the Sway Bar Defect in the Class Vehicles, and as a result of FCA's ill-gotten gains, benefits and profits, FCA has been unjustly enriched at the expense of Plaintiff and Class members.  It would be inequitable for FCA to retain its ill-gotten profits without paying the value thereof to Plaintiff and the Class members.

103.   There is a direct relationship between FCA on the one hand, and Plaintiff and the Class members on the other, sufficient to support a claim for unjust enrichment.  FCA failed to disclose the Sway Bar Defect to improve retail sales, which in turn improved wholesale sales. Conversely, FCA knew that disclosure of the Sway Bar Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact

1  the reputation of FCA's brand among Plaintiff and Class members.  FCA also knew its

2  concealment and suppression of the Sway Bar Defect would discourage Plaintiff and Class

3  members from seeking replacement or repair of the electronic sway bar disconnect, thereby

4  increasing profits and/or avoiding the cost of such replacement or repairs.

5      104.    Plaintiff and members of the Class are entitled to restitution in the amount of FCA's

6  ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and

7  inequitable conduct.

8      105.    Plaintiff and members of the Class seek an order requiring FCA to disgorge its gains

9  and profits to Plaintiff and members of the Class, together with interest, in a manner to be

10  determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated,

respectfully asks this Court to enter judgment against FCA and in favor of Plaintiff and the Class,

and award the following relief:

A.    An order certifying this action as a class action, declaring Plaintiff representatives of
      the Class, and appointing Plaintiff's counsel as counsel for the Class;

B.    An order awarding declaratory relief and enjoining FCA from continuing the
      unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices
      alleged herein;

C.    Injunctive and equitable relief in the form of a comprehensive program to repair the
      Sway Bar Defect, and/or buyback all Class Vehicles, and to fully reimburse and
      make whole all Class and Subclass members for all costs and economic losses;

D.    A declaration that FCA is financially responsible for all Class notice and the
      administration of Class relief;

E.    An order awarding to the extent available under governing law, restitution,
      disgorgement, and/or punitive damages, for economic loss and out-of-pocket costs
      in an amount to be determined at trial;

F.    A declaration that FCA is required to engage in corrective advertising;

G.    An order requiring FCA to pay both pre- and post- judgment interest on any amounts awarded;

H.    An award of costs, expenses, and attorneys' fees as permitted by law; and

I.    Such other or further relief as the Court may deem appropriate, just, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: September 20, 2022

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____
        Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
        jsmith@bursor.com

*Attorneys for Plaintiff*

1

## CLRA Venue Declaration, Civil Code § 1780(c)

2      I, Joel D. Smith, declare as follows:

3      1.      I have personal knowledge to the facts stated herein and, if called upon to do so,

4  could competently testify hereto.

5      2.      I am the attorney for Plaintiff in the above-captioned action.

6      3.      I submit this declaration in support of the Class Action Complaint, which is based in

7  part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*

8      4.      The Class Action Complaint has been filed in the proper place for trial of this

9  action.

10      5.      It is my understanding that FCA regularly transacts business in this County, and the

11  acts and omissions giving rise to this action occurred in large part in this County.

12      I declare under penalty of perjury under the laws of the United States that the foregoing is

13  true and correct to the best of my knowledge.  Executed on September 20, 2022 in Walnut Creek,

14  California.

15

16      By: _____
                 Joel D. Smith

17

18

19

20

21

22

23

24

25

26

27

28

CLRA VENUE DECLARATION

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Joel D. Smith, State Bar No. 244902
Bursor & Fisher, P.A., 1990 N. California Blvd., Suite 940, Walnut Creek, CA 94596

TELEPHONE NO.: (925) 300-4455     FAX NO. *(Optional)* (925) 407-2700
E-MAIL ADDRESS: jsmith@bursor.com
ATTORNEY FOR *(Name):* Plaintiff Eric Hunter

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME: Old Courthouse

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 9/20/2022 3:33 PM
Reviewed By: R. Walker
Case #22CV403295
Envelope: 10013054**

CASE NAME:
Eric Hunter v. FCA US LLC

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 22CV403295 |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000) | [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder |
| | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [x] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* Three
5. This case [x] is [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:
Joel D. Smith
_____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

Page 1 of 2

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev.September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courts.ca.gov*

ATTACHMENT CV-5012

# CIVIL LAWSUIT NOTICE

*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA 95113*

CASE NUMBER: __22CV403295__

---

## PLEASE READ THIS ENTIRE FORM

---

*PLAINTIFF* (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons,* an *Alternative Dispute Resolution (ADR) Information Sheet,* and a copy of this *Civil Lawsuit Notice,* and you must file written proof of such service.

---

*DEFENDANT* (The person sued):  **You must do each of the following to protect your rights:**

1. You must file a **written response** to the *Complaint, using the proper legal form or format,* in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint;*
2. You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

**Warning:  If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

---

*RULES AND FORMS:*   You must follow the California Rules of Court and the Superior Court of California, County of <_CountyName_> Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms:  http://www.sccsuperiorcourt.org/civil/rule1toc.htm

*CASE MANAGEMENT CONFERENCE (CMC):*  You must meet with the other parties and discuss the case, in person or by telephone at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC.*  You may ask to appear by telephone – see Local Civil Rule 8.

---

Your Case Management Judge is: Hon. Patricia M. Lucas          Department: 3

The 1st CMC is scheduled for: (Completed by Clerk of Court)
                Date: 02/08/2023   Time: 2:30pm        in Department: 3

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)
                Date: _____   Time: _____   in Department: _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):*  If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

Reset Form

---

CV-5012 REV 08/01/16                    **CIVIL LAWSUIT NOTICE**                    Page 1 of 1

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA**
**191 N. FIRST STREET**
**SAN JOSE, CA 95113-1090**

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 9/21/2022 3:10 PM
Reviewed By: R. Walker
Case #22CV403295
Envelope: 10024657**

TO:    FILE COPY

RE:    **Hunter v. FCA US LLC (Class Action)**
CASE NUMBER:    **22CV403295**

## ORDER DEEMING CASE COMPLEX AND STAYING DISCOVERY
## AND RESPONSIVE PLEADING DEADLINE

WHEREAS, the Complaint was filed by Plaintiff **Eric Hunter** ("Plaintiff") in the Superior Court of California, County of Santa Clara, on **September 20, 2022** and assigned to Department **3** (Complex Civil Litigation), the **Honorable Patricia M. Lucas** presiding, pending a ruling on the complexity issue;

IT IS HEREBY ORDERED that:
The Court determines that the above-referenced case is **COMPLEX** within the meaning of California Rules of Court 3.400. The matter remains assigned, for all purposes, including discovery and trial, to Department **3** (Complex Civil Litigation), the **Honorable Patricia M. Lucas** presiding.
The parties are directed to the Court's local rules and guidelines regarding electronic filing and to the Complex Civil Guidelines, which are available on the Court's website.
Pursuant to California Rules of Court, Rule 3.254, the creation and maintenance of the Master Service List shall be under the auspices of (1) Plaintiff **Eric Hunter**, as the first-named party in the Complaint, and (2) the first-named party in each Cross-Complaint, if any.
Pursuant to Government Code section 70616(b), each party's complex case fee is due within ten (10) calendar days of this date.
Plaintiff shall serve a copy of this Order on all parties forthwith and file a proof of service within seven (7) days of service.
Any party objecting to the complex designation must file an objection and proof of service within ten (10) days of service of this Order. Any response to the objection must be filed within seven (7) days of service of the objection. The Court will make its ruling on the submitted pleadings.
The Case Management Conference remains set for **February 8, 2023 at 2:30 p.m. in Department 3**.
Counsel for all parties are ordered to meet and confer in person at least 15 days prior to the First Case Management Conference and discuss the following issues:
1. Issues related to recusal or disqualification;
2. Issues of law that, if considered by the Court, may simplify or further resolution of the case, including issues regarding choice of law;
3. Appropriate alternative dispute resolution (ADR), for example, mediation, mandatory settlement conference, arbitration, mini-trial;
4. A plan for preservation of evidence and a uniform system for identification of documents throughout the course of this litigation;
5. A plan for document disclosure/production and additional discovery; which will generally be conducted under court supervision and by court order;

----

6. Whether it is advisable to address discovery in phases so that information needed to conduct meaningful ADR is obtained early in the case (counsel should consider whether they will stipulated to limited merits discovery in advance of certification proceedings), allowing the option to complete discovery if ADR efforts are unsuccessful;

7. Any issues involving the protection of evidence and confidentiality;

8. The handling of any potential publicity issues;

Counsel for Plaintiff is to take the lead in preparing a Joint Case Management Conference Statement to be filed 5 calendar days prior to the First Case Management Conference, and include the following:

1. a brief objective summary of the case;

2. a summary of any orders from prior case management conferences and the progress of the parties' compliance with said orders;

3. significant procedural and practical problems that may likely be encountered;

4. suggestions for efficient management, including a proposed timeline of key events; and

5. any other special consideration to assist the court in determining an effective case management plan.

To the extent the parties are unable to agree on the matters to be addressed in the Joint Case Management Conference Statement, the positions of each party or of various parties should be set forth separately and attached to this report as addenda. The parties are encouraged to propose, either jointly or separately, any approaches to case management they believe will promote the fair and efficient handling of this case. The Court is particularly interested in identifying potentially dispositive or significant threshold issues the early resolution of which may assist in moving the case toward effective ADR and/or a final disposition.

**STAY ON DISCOVERY AND RESPONSIVE PLEADING DEADLINE** Pending further order of this Court, the service of discovery and the obligation to respond to any outstanding discovery is stayed. However, Defendant(s) shall file a Notice of Appearance for purposes of identification of counsel and preparation of a service list. The filing of such a Notice of Appearance shall be without prejudice to the later filing of a motion to quash to contest jurisdiction. Parties shall not file or serve responsive pleadings, including answers to the complaint, motions to strike, demurrers, motions for change of venue and cross-complaints until a date is set at the First Case Management Conference for such filings and hearings.

This Order is issued to assist the Court and the parties in the management of this "Complex" case through the development of an orderly schedule for briefing and hearings. This Order shall not preclude the parties from continuing to informally exchange documents that may assist in their initial evaluation of the issues presented in this Case.

Plaintiff shall serve a copy of this Order on all the parties in this matter forthwith.

SO ORDERED.

Date: September 21, 2022

_____
Hon. **Patricia M. Lucas**
Judge of the Superior Court

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with Disabilities Act, please contact the Court Administrator's office at (408) 882-2700, or use the Court's TDD line, (408) 882-2690 or the Voice/TDD California Relay Service, (800) 735-2922.

----
Updated on 3/11/21.

2